UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT CULVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02838-JPH-DLP |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Robert Culver alleges that the Metropolitan School District of Martinsville unlawfully fired him for exercising his federally protected rights under the Americans with Disabilities Act and the Family and Medical Leave Act. Mr. Culver also claims that he was underpaid for overtime work in violation of federal law. The School District has moved for summary judgment. Dkt. [46]. For the following reasons, the School District's motion is **GRANTED in part and DENIED in part**.

## I.
## Facts and Background

Because the School District moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Culver was a long-time network administrator for the School District, where he was responsible for the upkeep of servers and computer

infrastructure. Dkt. 48-3 at 3, 5 (Culver Dep. at 8, 15); dkt. 48-1 at 4 (Friese Dep. at 21). He was paid hourly and, if he worked more than forty hours in a week, could either get time-and-a-half pay or one hour of compensatory time for each overtime hour. Dkt. 48-1 at 5, 7 (Friese Dep. at 24, 31); dkt. 49-4 at 7 (Arthur Dep. at 25).

In early 2019, Mr. Culver took time off work under the Family and Medical Leave Act (FMLA) to undergo four surgeries—two on his knee and two on his back. Dkt. 48-1 at 9–10 (Friese Dep. at 38–42); dkt. 48-3 at 6 (Culver Dep. at 18–19). When he returned to work after his last surgery in late November, Mr. Culver asked his boss, Brian Friese, for one more day off—December 5—to accompany his wife, Karen, who has ALS, to a doctor's appointment. Dkt. 48-3 at 7–9 (Culver Dep. at 24, 27–29).

Mr. Friese discussed the situation with Dr. Jason Arthur, the superintendent, and on December 3 Mr. Friese denied the request for additional leave. Dkt. 48-1 at 11 (Friese Dep. at 48-51). That afternoon, Mr. Culver and Mr. Friese met to discuss the issue. Dkt. 48-3 at 9 (Culver Dep. at 30). Mr. Friese said Mr. Culver could not miss work on December 5 because he had "been off too much for the surgeries," and would be terminated if he didn't show up on the day of his wife's appointment. *Id.*

Agitated, Mr. Culver said he was "out of [t]here," walked out of Mr. Friese's office, and left work without clocking out. Dkt. 48-3 at 9–10 (Culver Dep. at 33); dkt. 48-1 at 13 (Friese Dep. at 55). Mr. Culver went home to talk with his wife about making alternate arrangements for her doctor's

appointment. Dkt. 48-3 at 9 (Culver Dep. at 33). They could not finalize a new plan before Karen left for work, as "[s]he was all upset she was getting [him] fired." *Id.*

Soon after, at 4:03 p.m., Mr. Friese left Mr. Culver a voicemail:

> Bob, this is Brian. I think we definitely left things in not — not a good way. There were a lot more things that I wanted to talk to you about before you left. Unfortunately, that didn't get to happen. I have some creative solutions in mind that I'd like to talk to you about if you're willing to have a conversation about that, which I think we can accomplish. I really don't want to leave things . . . they are where you and I both have a bad taste in our mouth. Ultimately, we have to think about what's best for the district. So I'd like to hear back from you, I'd like to talk. **I would appreciate you getting back with me no later than 8 p.m. tonight. If not, I will assume that you have officially resigned.** So hopefully you will reach out. Thank you. Bye.

Dkt. 48-1 at 13 (Friese Dep. at 57) (emphasis added); dkt. 48-3 at 10 (Culver Dep. at 35). Mr. Culver did not see or hear the message until 7:17 p.m. Dkt. 48-3 at 10 (Culver Dep. at 35). At that time, he texted Mr. Friese that he could not give him an answer by 8 p.m., but could let him know by 10 p.m. *Id.*; dkt. 48-1 at 15 (Friese Dep. at 64). At 7:54 p.m., Mr. Friese texted back: "I'm expecting to hear by 8:00 p.m. If you can't provide an answer by then, I will take that as your resignation." Dkt. 48-3 at 10 (Culver Dep. at 35).

Mr. Culver didn't respond. Dkt. 48-1 at 16 (Friese Dep. at 68). At 8:05 p.m., his email access was shut off. Dkt. 48-3 at 10 (Culver Dep. at 36). The next day, December 4, Mr. Culver went to work. He said he was hoping to talk to Mr. Friese and "figure out what [they] were going to do" about his job. *Id.* at 16 (Culver Dep. at 58). He texted Mr. Friese asking to get his personal belongings, dkt. 48-1 at 16–17 (Friese Dep. at 69–70), but Mr. Friese texted

back that he was not available and asked Mr. Culver to return any school property in his possession, dkt. 48-3 at 11 (Culver Dep. at 40).

Mr. Culver filed this suit on November 4, 2020, alleging discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and retaliation and interference under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Dkt. 1 at 6–8 (Compl. ¶¶ 48–67). He also alleges that the School District violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to properly compensate him for overtime hours worked. *Id.* at 9 (Compl. ¶¶ 68–71). The School District has moved for summary judgment on all claims. Dkt. 46.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

### A. ADA and FMLA Retaliation

Mr. Culver claims that the School District terminated his employment in retaliation for taking protected leave for his surgeries and for attempting to take protected leave to care for his wife. Dkt. 1 at 7–8 (Compl. ¶¶ 55–67). The ADA prohibits covered employers from discriminating against an employee because of the employee's disability or "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(a), (b)(4). The FMLA gives eligible employees the right to take leave for certain health conditions of their own or to care for a family member. 29 U.S.C. § 2612(a)(1). Both the ADA and the FMLA prohibit employers from retaliating against employees who assert their statutory rights. *Id.* § 2615; 42 U.S.C. § 12203.

While these two statutes are "legally distinct," in cases claiming unlawful retaliation, the analyses overlap. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018). To succeed on a retaliation claim under either statute, a plaintiff must prove that "(1) he engaged in statutorily protected activity; (2) the employer took adverse action against [him]; and (3) the protected activity caused the adverse action." *Id.*

An action is materially adverse if "a reasonable employee . . . would be dissuaded from engaging in the protected activity." *Roney v. Ill. Dep't of Trans.*, 474 F.3d 455, 461 (7th Cir. 2007). If an employee is involuntarily terminated, he has suffered a materially adverse employment action, but if he resigns under his own free will, he has not. *Compare Koty v. DuPage Cnty.*, 900 F.3d 515, 520 (7th Cir. 2018), *with Rutledge v. Eli Lilly & Co.*, No. 1:10-cv-1693, 2012 WL 3065430, at *3–4 (S.D. Ind. July 27, 2012). A resignation that is involuntary is considered a termination. *Spreen v. Brey*, 961 F.2d 109, 112 (7th Cir. 1992).

The School District argues that it is entitled to summary judgment on Mr. Culver's retaliation claims because there was no adverse employment action. In the School District's view, the facts show that he "voluntarily left work and never returned," and therefore resigned under his own free will. Dkt. 47 at 9. Mr. Culver responds that because he "never told anyone he was quitting" and "never refused to work," there are facts from which a jury could reasonably find that he was fired. Dkt. 50 at 1.

On December 3, Mr. Culver was told that he couldn't take off December 5, the day of his wife's doctor's appointment, because he had already taken too many days off for his surgeries. Dkt. 49-1 at 9 (Culver Dep. at 30). His boss, Mr. Friese, gave him an ultimatum: show up on December 5 or be terminated. *Id.* (Culver Dep. at 30–31). Unsure what to do next, and finding the demand unfair, Mr. Culver told Mr. Friese he was "out of there." *Id.* (Culver Dep. at 32).

Mr. Culver and his wife couldn't decide what to do about the December 5 medical appointment because his wife was upset at the situation and needed to go to work. *Id.* at 10 (Culver Dep. at 33). While his wife was away, Mr. Friese left Mr. Culver a voicemail with a hard 8 p.m. deadline for Mr. Culver to decide whether he was going to come into work on December 5. *Id.* (Culver Dep. at 35). Mr. Culver didn't see that message until 45 minutes before the deadline, so he asked for an extension to 10 p.m. *Id.* Six minutes before the deadline, Mr. Friese refused to give the extension. *Id.* Shortly after 8 p.m., Mr. Culver's email was shut off. *Id.* (Culver Dep. at 36).

The next day, Mr. Culver went to work to try and talk to Mr. Friese and work something out. *Id.* at 10–11 (Culver Dep. at 36–38). Mr. Culver was told that Mr. Friese couldn't meet with him, so Mr. Culver went home. *Id.* at 11 (Culver Dep. at 37, 39).

The School District contends that because "Culver changed his own terms and conditions when he voluntarily quit his job," this case is "very much like" *Andrews v. CBOCS West, Inc.*, 743 F.3d 230 (7th Cir. 2014).[1] *See* dkt. 47 at 7. But there, the plaintiff was terminated by an automated, computerized process after she did not show up to work for more than three weeks. 834 F.3d at 235–37. The Seventh Circuit held that the plaintiff had not suffered an adverse employment action because the undisputed facts showed that she "voluntarily left her job" and "never returned to work" in anticipation of a

---

[1] *Andrews* has since been overruled on other grounds. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

transfer to a new restaurant. *Id.* at 237. Her termination was an "administrative formality precipitated by her voluntary absence," and thus, she "wasn't forced to leave her job . . . nor was she prevented from returning." *Id.* at 236.

Here, the facts paint a very different picture. Martinsville school officials decided to lock Mr. Culver out of his accounts when they did not hear from him by the 8:00 p.m. deadline that had been imposed earlier that day. *See* dkt. 48-1 at 16 (Friese Dep. at 68) (stating that Mr. Friese and the superintendent jointly agreed to lock Mr. Culver out of his accounts). The next day, Mr. Culver went to work to speak with Mr. Friese who texted back that he wasn't available and asked Mr. Culver to return school property. Dkt. 48-3 at 11, 16 (Culver Dep. at 37–38, 40, 58).

The facts in this case are more like the facts in *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, which Mr. Culver cites. 464 F.3d 659 (7th Cir. 2006). There, the plaintiff asked to leave work early after a disagreement with her boss. *Id.* at 663. Paz's boss allowed her to go, but also said, "If you walk out that door, don't come back." *Id.* Paz left. *Id.* When she reported back for work the next day, she had been removed from the schedule and her job duties were reassigned. *Id.* After Paz sued, "the parties sharply disagree[d] as to whether Paz was fired or abandoned her job." *Id.* at 665. Since the record was "replete with credibility questions and competing versions of the facts," the Seventh Circuit reversed the trial court's grant of summary judgment. *Id.* ("[T]his case should be sorted out by the trier of fact.").

So too here. As in *Paz*, there are disputed, material facts about whether Mr. Culver was fired or voluntarily resigned. For example, Mr. Friese stated that Mr. Culver said "I quit" at the end of the December 3 meeting, dkt. 49-3 at 15 (Friese Dep. at 54), while Mr. Culver insists he never said that and only said that he was "out of [t]here," dkt. 49-1 at 9 (Culver Dep. at 32). Viewing all the evidence in the light most favorable to Mr. Culver, a reasonable jury could find that he was involuntarily terminated from his position. From these same disputed facts, however, a reasonable jury could find that the School District was justified in taking Mr. Culver's words and actions as his resignation. Reaching either conclusion will require making findings of fact and credibility determinations, tasks that are reserved for a jury. *See, e.g.*, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Therefore, the School District's motion for summary judgment on Mr. Culver's retaliation claims is **DENIED**.

### B. ADA Discrimination

The ADA prohibits employers from discriminating against a qualified individual because of disability. 42 U.S.C. § 12112(a). To succeed on his discrimination claim, Mr. Culver must "allege facts showing that '(1) he is "disabled"; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability.'" *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quoting *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008)).

The School District argues that Mr. Culver's ADA claim fails because "[t]here is a complete lack of evidence that" he was disabled while employed.[2] Dkt. 47 at 9–10. Mr. Culver responds that the designated evidence demonstrates that he meets the ADA's definition of disability. Dkt. 50 at 22–26. Mr. Culver also points out that the School District's motion did not address his associational discrimination claim based on his close relationship with his wife, who has Lou Gehrig's disease (ALS). *See* dkt. 50 at 26; dkt. 1 at 2 (Compl. ¶¶ 5, 7); dkt. 42 (statement of claims).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A person is "substantially limited" if they are "significantly restricted in the duration, manner, or condition under which the [person] can perform a particular major life activity, as compared to the average person in the general population." *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002). While this analysis should not be demanding, *see* 29 C.F.R. § 1630.2(j)(1)(i), the question is "an individualized one, and must be determined on a case-by-case basis," *DePaoli v. Abbott Labys.*, 140 F.3d 668, 672 (7th Cir. 1998).

---

[2] The School District also argues that it is entitled to summary judgment on this claim because Mr. Culver did not suffer an adverse employment action. Dkt. 47 at 9–10. The Court already determined *supra* that whether Mr. Culver was fired or resigned—and thus whether there was an adverse employment action—must be decided by a jury.

**1. Impairment that Substantially Limits Major Life Activities**

The School District concedes that Mr. Culver had physical impairments while employed, as he had arthritis, diabetes, and fibromyalgia, as well as knee and back surgeries. *See* dkt. 48-3 at 6, 12 (Culver Dep. at 18–19, 42–43). But the School District argues that Mr. Culver has not shown that he was substantially limited in any major life activity. *See* 42 U.S.C. § 12102(1)(A). In response, Mr. Culver points to his impairments as intrinsic proof of disability under the Act. *See* dkt. 50 at 24–25.

Giving Mr. Culver the benefit of all inferences, it is fair to assume that his arthritis, fibromyalgia, and knee and back surgeries would give him difficulty walking. *See* 29 C.F.R. § 1630.2(i)(1)(i) (listing "walking" as a major life activity). But "walking with difficulty" is not the same thing as being substantially limited at walking. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010).

Therefore, Mr. Culver has not designated evidence showing that his impairments "substantially limit[ed] one or more of [his] major life activities." *See* 42 U.S.C. § 12102(1)(A).[3] "[B]are assertion[s]" that an impairment constitutes a disability are "insufficient." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012). A plaintiff must rely on more than the "name or

---

[3] Mr. Culver argues that major life activities include "physiological disorders affecting the musculoskeletal system." Dkt. 50 at 24 (citing 29 C.F.R. § 1630.2(h)(1)). But that is incorrect: a physiological disorder is a "physical or mental impairment," not a "major life activity." Mr. Culver must provide evidence that this impairment affects a "major life activity" to qualify under the Act. *See* 29 C.F.R. § 1630.2(i) (listing major life activities such as reading, concentrating, and thinking).

diagnoses of the impairment"; he must also show "the effect of that impairment on him." *Id.* (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006)) (internal quotations omitted). It is impossible to conduct a "case-by-case analysis" of Mr. Culver's claimed disability because there are no relevant facts in the record that would allow the Court to conduct a meaningful inquiry. *Cf. Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (analyzing arthritic plaintiff's "rate and pace" of walking to determine disability); *Jackson v. City of Chicago*, 293 F. Supp. 2d 836, 841 (N.D. Ill. 2003) (holding that a reasonable jury could find that plaintiff with fibromyalgia was disabled because record showed doctor's opinions of limitations and use of a cane).

Since Mr. Culver has designated no evidence showing the effect of his impairments, no reasonable jury could find that he has a disability under § 12102(1)(A).

**2. Record of Disability and Perceived Disability**

Mr. Culver contends that even if he has not shown that he is disabled, he nonetheless may proceed with his ADA claim because the School District either (i) had a record of him having a disability or (ii) regarded him as having a disability. 42 U.S.C. § 12102(1)(B)–(C). The School District did not address these aspects of Mr. Culver's claim.

To succeed under a record of disability claim, Mr. Culver "must again show that h[is] impairment substantially limits one or more major life activities." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007) (citing 29 C.F.R. § 1630.2(k)). "[A]n employer's possession of records

detailing . . . surgeries does not mean that the employee is statutorily disabled." *Id.*

Mr. Culver has designated no evidence that the School District had a record showing that he had impairments that substantially limited any major life activities. His sole reliance on his surgeries as creating a "record of disability" is insufficient to create a triable issue. *See id.*

Mr. Culver also claims to have a perceived disability, which exists if the School District "mistakenly believes that [he] has an impairment that substantially limits a major life activity, or (2) the [School District] mistakenly believes that an existing impairment that is not really limiting does substantially limit a major life activity." *Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 937 (7th Cir. 2006) (citing *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005)). But "[a]wareness of the condition . . . is not the same thing as a belief that the condition is substantially impairing." *Id.* To succeed, a plaintiff must show that their employer "held exaggerated views about the seriousness of his" impairment. *Id.* (quoting *Ogborn v. United Food & Com. Workers Union, Local No. 881*, 305 F.3d 763, 786 (7th Cir. 2002)).

Again, Mr. Culver has submitted no evidence beyond the mere existence of his surgeries to show that the School District believed his impairments were "substantially impairing." *See* dkt. 50 at 25. Since the School District's awareness of his situation is not the same as a perceived disability, the School

District is entitled to summary judgment on this claim. *See Cassimy*, 461 F.3d at 937.

* * *

Since Mr. Culver has not "present[ed] definite, competent evidence to rebut the motion," *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000), the School District's motion for summary judgment on Mr. Culver's discrimination claim is **GRANTED in part**.[4] Because the School District did not move for summary judgment on Mr. Culver's associational discrimination claim, *see* dkt. 50 at 26; dkt. 1 at 2 (Compl. ¶¶ 5, 7); dkt. 42 (statement of claims), it will proceed to trial.

**C. FMLA Interference**

Under the FMLA, an employee suffering from serious health conditions is "entitled to a total of 12 workweeks of leave," or 60 workdays, "during any 12-month period." 29 U.S.C. § 2612(a)(1). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right guaranteed by the FMLA. *Id.* § 2615(a)(1). The School District argues that it could not have denied Mr. Culver FMLA benefits or interfered with his rights under the FMLA because Mr. Culver had used all of his FMLA leave. Dkt. 47 at 10 (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). Mr. Culver contends a reasonable jury could find that he had not run out of

[4] This holding does not affect the viability of Mr. Culver's retaliation claims, which do not require that he be "disabled." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).

FMLA leave when he asked for one more day to take his wife to an appointment.[5] Dkt. 50 at 28–29.

The School District argues that Mr. Culver foreclosed this claim when he said that he took 180 days of leave in 2019. *See* Dkt. 48-3 at 7 (Culver Dep. at 21–22). Mr. Culver responds that he did not keep track of his FMLA leave, *see* dkt. 49-1 at 7 (Culver Dep. at 21), and must have been mistaken when he made that statement, dkt. 50 at 2–3. Additionally, he points to the School District's files, which show that he only took slightly more than 54 days of FMLA leave in 2019. *See* Dkt. 49-2 at 1–3 (attached to Order as App. A). Viewed in the light most favorable to Mr. Culver, a reasonable jury could conclude from the School District's records that Mr. Culver was under the sixty-day cap and eligible under the FMLA to take additional leave to accompany his wife to her appointment on December 5. For this reason, the School District's motion for summary judgment on Mr. Culver's FMLA interference claim is **DENIED**.

**D. FLSA Violation**

Under the FLSA, employers generally cannot employ their workers more than forty hours per week unless the employee receives overtime pay "at a rate

---

[5] Mr. Culver also argues that the School District interfered with his FMLA rights before December 2019, when Mr. Friese allegedly required Mr. Culver to come back to work before his leave was supposed to end in January 2019. Dkt. 50 at 27–28 (citing dkt. 49-1 at 6 (Culver Dep. at 19)). This allegation was not made in his complaint. *See* dkt. 1. A party may not amend their complaint through a response brief, *e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), so the Court will only analyze the alleged FMLA interference in December 2019.

not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). But certain "computer employees" are exempt from these requirements as long as they (i) are paid on a "salary basis" of more than $684 per week and (ii) have a particular primary duty. 29 C.F.R. § 541.400(b); *see* 29 U.S.C. § 213(a)(1). Relevant here, one such duty is the designing, development, or modification of computer systems. 29 C.F.R. § 541.400(b)(2). Determining the appropriate FLSA classification is a question of law. *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008).

It's undisputed that Mr. Culver's primary duties place him within the "exempt" category for the purpose of FLSA classification, but the parties disagree as to whether Mr. Culver was paid on a "salary basis." Mr. Culver claims that he was paid hourly and therefore was not properly compensated for overtime wages earned. Dkt. 1 at 9 (Compl. ¶¶ 68–71). The School District contends that, as a public employee, Mr. Culver's pay structure only appears hourly, but, in fact, he meets the "salary basis" test. Dkt. 47 at 11–15.

Generally, an employee is deemed to be paid on a "salary basis" within the meaning of the FLSA if the employee regularly receives "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of the variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The employer "bears the burden of proof" of making that showing because the FLSA "is a remedial act and exemptions from its coverage are to be narrowly construed against employers." *Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002).

The School District concedes that Mr. Culver is paid hourly, "would lose pay for partial-day absences," and therefore is not paid a predetermined amount. Dkt. 47 at 13; *see also* dkt. 48-3 at 4–5 (Culver Dep. at 12–13); dkt. 49-4 at 5 (Arthur Dep. at 16–17); dkt. 48-1 at 5 (Friese Dep. at 22) ("He was not salaried. . . . He was required to clock in . . . and clock out."). The School District instead argues that federal regulations permit government employers to dock the pay of employees under a system of "public accountability" while still classifying them as exempt. 29 C.F.R. § 541.710(a). But this regulation applies only to otherwise salaried public employees who happen to have their pay docked. *See id.* ("An employee of a public agency who otherwise meets the salary basis requirements . . . shall not be disqualified from exemption . . . ."); *see also Demos*, 302 F.3d at 700.

Since the School District admitted that Mr. Culver would lose pay for partial-day absences, *see* dkt. 47 at 13, it cannot meet its burden of showing that Mr. Culver is paid on a "salary basis." *See Demos*, 302 F.3d at 701. Therefore, there is no need to analyze whether the School District's payroll policies and practices are consistent with public accountability principles. *See id.*

Because the School District concedes that Mr. Culver has not met the "salary basis" test, its motion for summary judgment on Mr. Culver's FLSA claim is **DENIED**.

## IV.
## Conclusion

Defendant's motion for summary judgment is **GRANTED** as to Mr. Culver's claim of ADA discrimination based on his disability.

Defendant's motion for summary judgment is **DENIED** as to Mr. Culver's claim of (1) ADA and FMLA retaliation; (2) FMLA interference; and (3) FLSA violations. His ADA claim for associational discrimination also continues.

The magistrate judge is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 9/27/2022

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Eric J. Hartz
CLEVELAND LEHNER CASSIDY
eric@clcattorneys.com

Meghan Uzzi Lehner
CLEVELAND LEHNER CASSIDY
meghan@clcattorneys.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com

Lana R. Swingler
POLLACK LAW FIRM PC
lswingler@pollacklawpc.com

**APPENDIX A**

Dkt. 49-2 at 1–3 (highlights added)

1/6/2020 CULVER, ROBERT J - Transaction Details

PLAINTIFF'S EXHIBIT B

| Grp | Code | Date | Comment | Allocated | Used | Left | Type | Reason | A | HTOTRN-ID |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | COMPH | 12/05/2019 | Allocated Comp Time | 0.2500 | | | Hours | | | 150189 |
| 1 | SCK12 | 11/15/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149667 |
| 1 | SCK12 | 11/14/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149666 |
| 1 | SCK12 | 11/13/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149665 |
| 1 | SCK12 | 11/12/2019 | Days granted from sick leave bank - SKP | 10.0000 | | | Days | | | 149657 |
| 1 | SCK12 | 11/12/2019 | FMLA (from sick leave bank) - SKP | | 1 0000 | | Days | | | 149664 |
| 1 | SCK12 | 11/11/2019 | FMLA (from sick leave bank) - SKP | | 1 0000 | | Days | | | 149663 |
| 1 | SCK12 | 11/08/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149662 |
| 1 | SCK12 | 11/07/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149661 |
| 1 | SCK12 | 11/06/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149660 |
| 1 | SCK12 | 11/05/2019 | FMLA (from sick leave bank) - SKP | | 1.0000 | | Days | | | 149659 |
| 1 | SCK12 | 11/04/2019 | FMLA (from sick leave bank) - SKP | | 1 0000 | | Days | | | 149658 |
| 1 | SCK12 | 11/03/2019 | Days granted from sick bank - SKP | 3.0000 | | | Days | | | 149433 |
| 1 | SCK12 | 11/01/2019 | FMLA (from sick bank) - SKP | | 1 0000 | | Days | | | 149436 |
| 1 | SCK12 | 10/31/2019 | FMLA (from sick bank) - SKP | | 1.0000 | | Days | | | 149435 |
| 1 | SCK12 | 10/30/2019 | FMLA (from sick bank) - SKP | | 1.0000 | | Days | | | 149434 |
| 3 | VAC10 | 10/15/2019 | FMLA added after 10/25 payroll - SKP | | 0.6700 | | Days | | | 149389 |
| 2 | COMPH | 10/15/2019 | FMLA added after 10/25 payroll - SKP | | 2.7500 | | Hours | | | 149388 |
| 2 | COMPH | 10/14/2019 | FMLA added after 10/25 payroll - SKP | | 8.0000 | | Hours | | | 149387 |
| 3 | VAC10 | 10/11/2019 | FMLA added after 10/25 payroll - SKP | | 1.0000 | | Days | | | 149386 |
| 3 | VAC10 | 10/10/2019 | FMLA added after 10/25 payroll - SKP | | 1 0000 | | Days | | | 149385 |
| 3 | VAC10 | 10/09/2019 | FMLA added after 10/25 payroll - SKP | | 1.0000 | | Days | | | 149384 |
| 3 | VAC10 | 10/08/2019 | FMLA added after 10/25 payroll - SKP | | 1 0000 | | Days | | | 149383 |
| 3 | VAC10 | 10/07/2019 | FMLA added after 10/25 payroll - SKP | | 1 0000 | | Days | | | 149382 |
| 2 | COMPH | 10/07/2019 | Allocated Comp Time | 0.2500 | | | Hours | | | 148721 |
| 2 | COMPH | 10/07/2019 | Allocated Comp Time | 0.2500 | | | Hours | | | 148720 |
| 3 | VAC10 | 09/30/2019 | | | 1.0000 | | Days | AUTOMATIC | | 148064 |
| 3 | VAC10 | 09/27/2019 | | | 1.0000 | | Days | AUTOMATIC | | 147786 |
| 2 | COMPH | 09/23/2019 | Allocated Comp Time | 1 0000 | | | Hours | | | 148331 |
| 2 | COMPH | 09/09/2019 | Allocated Comp Time | 3.2500 | | | Hours | | | 147954 |
| 2 | COMPH | 09/09/2019 | Allocated Comp Time | 4.2500 | | | Hours | | | 147953 |
| 2 | COMPH | 08/27/2019 | Allocated Comp Time | 1.7500 | | | Hours | | | 147631 |
| 3 | VAC10 | 08/23/2019 | | | 0.0800 | | Days | | | 147566 |
| 3 | VAC10 | 08/08/2019 | FMLA - Added after payroll - SDF | | 0.3000 | | Days | | | 147290 |
| 3 | VAC10 | 08/07/2019 | FMLA - Added after payroll - SDF | | 0.2000 | | Days | | | 147289 |
| 3 | VAC10 | 08/02/2019 | FMLA | | 0 2500 | | Days | | | 146963 |
| 3 | VAC10 | 07/31/2019 | FMLA | | 0.5000 | | Days | | | 146962 |
| 3 | VAC10 | 07/30/2019 | FMLA | | 0 5000 | | Days | | | 146961 |
| 3 | VAC10 | 07/29/2019 | FMLA | | 0.2500 | | Days | | | 146960 |
| 3 | VAC10 | 07/26/2019 | FMLA | | 1.0000 | | Days | | | 146869 |
| 3 | VAC10 | 07/25/2019 | FMLA | | 0.4100 | | Days | | | 146870 |
| 3 | VAC10 | 07/24/2019 | FMLA | | 0.4700 | | Days | | | 146845 |
| 3 | VAC10 | 07/23/2019 | FMLA | | 1.0000 | | Days | | | 146844 |
| 3 | VAC10 | 07/22/2019 | FMLA | | 0 7500 | | Days | | | 146843 |
| 3 | VAC10 | 07/19/2019 | FMLA | | 0 6200 | | Days | | | 146842 |
| 3 | VAC10 | 07/18/2019 | FMLA | | 1.0000 | | Days | | | 146841 |
| 1 | PERSN | 07/17/2019 | FMLA | | 1.0000 | | Days | | | 146840 |
| 1 | PERSN | 07/16/2019 | FMLA | | 1.0000 | | Days | | | 146839 |
| 1 | PERSN | 07/15/2019 | FMLA | | 1.0000 | | Days | | | 146838 |

**APPENDIX A** (Continued)

1/6/2020 DEFRRFP0107 CULVER, ROBERT J - Transaction Details

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | SCK12 | 07/12/2019 | FMLA | | | | | |
| 1 | SCK12 | 07/11/2019 | FMLA | | 1 0000 | Days | | 146520 |
| 1 | SCK12 | 07/10/2019 | FMLA | | 1 0000 | Days | | 146519 |
| 1 | SCK12 | 07/09/2019 | FMLA | | 1 0000 | Days | | 146518 |
| 1 | SCK12 | 07/08/2019 | FMLA | | 1.0000 | Days | | 146517 |
| 1 | SCK12 | 07/05/2019 | FMLA | | 1.0000 | Days | | 146516 |
| 1 | SCK12 | 07/03/2019 | FMLA | | 1.0000 | Days | | 146515 |
| 1 | SCK12 | 07/02/2019 | FMLA | | 1.0000 | Days | | 146514 |
| 3 | VAC10 | 07/01/2019 | 2019-2020 | | 1 0000 | Days | | 146513 |
| 1 | SCK12 | 07/01/2019 | 2019-2020 | 15.0000 | | Days | AUTOMATIC | 145168 |
| 1 | SCK12 | 07/01/2019 | FMLA | 9.0000 | | Days | | 146255 |
| 1 | PERSN | 07/01/2019 | 2019-2020 | | 1.0000 | Days | | 146512 |
| 2 | COMPH | 06/27/2019 | FMLA | 3.0000 | | Days | | 146511 |
| 2 | COMPH | 06/26/2019 | From week of 6/26/19 - Bob asked me to assign his comp time while he is off on leave. | | 4.3200 | Hours | | 145162 |
| 2 | COMPH | 06/26/2019 | FMLA | 1 7500 | | Hours | | 145160 |
| 2 | COMPH | 06/17/2019 | Allocated Comp Time | | 8.0000 | Hours | | 145161 |
| 2 | COMPH | 06/07/2019 | | 10 5000 | | Hours | | 144656 |
| 1 | SCK12 | 06/07/2019 | | | 2.0000 | Hours | AUTOMATIC | 144577 |
| 2 | COMPH | 06/06/2019 | | | 0.2600 | Days | AUTOMATIC | 144578 |
| 2 | COMPH | 06/05/2019 | | | 8.0000 | Hours | AUTOMATIC | 144576 |
| 1 | SCK12 | 06/04/2019 | | | 3.0000 | Hours | AUTOMATIC | 144575 |
| 2 | COMPH | 06/03/2019 | Allocated Comp Time | | 0.1900 | Days | AUTOMATIC | 144549 |
| 2 | COMPH | 05/31/2019 | | 4.7500 | | Hours | | 144537 |
| 2 | COMPH | 05/20/2019 | Allocated Comp Time | | 8 0000 | Hours | AUTOMATIC | 144467 |
| 2 | COMPH | 05/06/2019 | Allocated Comp Time | 8 7500 | | Hours | | 144267 |
| 2 | COMPH | 05/06/2019 | Allocated Comp Time | 0.5000 | | Hours | | 143908 |
| 3 | VAC10 | 05/02/2019 | | 7.0000 | | Hours | | 143907 |
| 3 | VAC10 | 05/01/2019 | | | 0.5000 | Days | AUTOMATIC | 143759 |
| 3 | VAC10 | 04/30/2019 | | | 1.0000 | Days | AUTOMATIC | 143570 |
| 3 | VAC10 | 04/29/2019 | | | 1.0000 | Days | AUTOMATIC | 143569 |
| 2 | COMPH | 04/19/2019 | Added by BRIAN FRIESE 04/22/2019 | | 1.0000 | Days | AUTOMATIC | 143568 |
| 2 | COMPH | 04/12/2019 | | | 0.7500 | Hours | AUTOMATIC | 143393 |
| 2 | COMPH | 04/10/2019 | | | 8.0000 | Hours | AUTOMATIC | 143144 |
| 1 | SCK12 | 04/10/2019 | | | 6.0000 | Hours | AUTOMATIC | 143142 |
| 2 | COMPH | 04/08/2019 | Allocated Comp Time | | 0.2500 | Days | AUTOMATIC | 143143 |
| 3 | VAC10 | 03/29/2019 | | 9.2500 | | Hours | | 143093 |
| 1 | SCK12 | 03/28/2019 | | | 1.0000 | Days | AUTOMATIC | 142829 |
| 2 | COMPH | 03/25/2019 | Allocated Comp Time | | 0.2500 | Days | AUTOMATIC | 142828 |
| 2 | COMPH | 03/25/2019 | Allocated Comp Time | 0.5000 | | Hours | | 142804 |
| 2 | COMPH | 03/19/2019 | | 0.5000 | | Hours | | 142803 |
| 2 | COMPH | 03/11/2019 | Allocated Comp Time | | 4 0000 | Hours | AUTOMATIC | 142748 |
| 2 | COMPH | 03/11/2019 | Allocated Comp Time | 1.2500 | | Hours | | 142396 |
| 2 | COMPH | 02/25/2019 | Allocated Comp Time | 1.5000 | | Hours | | 142395 |
| 3 | VAC10 | 02/22/2019 | | 0.2500 | | Hours | | 141806 |
| 3 | VAC10 | 02/15/2019 | | | 1.0000 | Days | AUTOMATIC | 141749 |
| 1 | PERSN | 02/12/2019 | | | 1 0000 | Days | AUTOMATIC | 141523 |
| 1 | SCK12 | 02/08/2019 | FMLA | | 1.0000 | Days | AUTOMATIC | 141522 |
| 1 | SCK12 | 02/07/2019 | FMLA | | 0.5000 | Days | | 141301 |
| 1 | SCK12 | 02/06/2019 | FMLA | | 0.4500 | Days | | 141300 |
| 1 | SCK12 | 02/05/2019 | FMLA | | 0.4500 | Days | | 141296 |
| | | | | | 0.4500 | Days | | 141295 |

1/6/2020 CULVER, ROBERT J - Transaction Details

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | SCK12 | 02/04/2019 | FMLA | | 0.4500 | Days | | 141294 |
| 1 | SCK12 | 02/01/2019 | FMLA | | 1.0000 | Days | | 140834 |
| 1 | SCK12 | 01/31/2019 | FMLA | | 1.0000 | Days | | 140833 |
| 1 | SCK12 | 01/30/2019 | FMLA | | 1.0000 | Days | | 140832 |
| 1 | SCK12 | 01/29/2019 | FMLA | | 1 0000 | Days | | 140831 |
| 1 | SCK12 | 01/28/2019 | FMLA | | 1.0000 | Days | | 140830 |
| 1 | SCK12 | 01/25/2019 | FMLA | | 1.0000 | Days | | 140829 |
| 1 | SCK12 | 01/24/2019 | FMLA | | 1.0000 | Days | | 140828 |
| 1 | SCK12 | 01/23/2019 | FMLA | | 1.0000 | Days | | 140827 |
| 1 | SCK12 | 01/22/2019 | FMLA | | 1.0000 | Days | | 140826 |
| 1 | SCK12 | 01/18/2019 | FMLA | | 1.0000 | Days | | 141008 |
| 1 | SCK12 | 01/17/2019 | FMLA | | 1.0000 | Days | AUTOMATIC | 140694 |
| 2 | COMPH | 01/16/2019 | | | 8.0000 | Hours | AUTOMATIC | 140693 |